February 5, 2008 1:39 PM

RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _____ /_____

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

JOHN JOSEPH SHULICK,

_____/

Petitioner,

Civil Actic

**1:08-cv-121**
Paul L Maloney - US District Judge
Ellen S Carmody - US Magistrate Judge

Hon. _____

v.

MICHIGAN DEPARTMENT OF CORRECTION

COMMISSIONED AND CONTRACTED OFFICERS AND AGENTS:

RUO FOSTER, C/O ACKERMAN, RN GRIFFIN, C/O WEGNER. LT. ROBINSON,
UNIDENTIFIED SECOND SHIFT RN, C/O SEEWALD, CPT. SAHAGUN, C/O
GAFFORD, C/O DAVIS, C/O ADDIS, UNIDENTIFIED ER PHYSICIANS, RN
BARBER, PA LA NORE, DR. NELSON, ORTHOPEDIC SURGEON A. ANHOLTZ,
TRANSPORTATION OFFICERS C/O CARROLL AND C/O TORTERELLI, HUM.
HELEN THOMPSON, AND RN SUPERVISOR A. AQUINO.

_____

Deponents,

West Shoreline Correctional Facility
2500 S. Sheridan Drive
Muskegon Heights, MI 49444

_____/

State of Michigan )
                  )SS.
County of Muskegon)

### PETITION FOR DEPOSITION TO PERPETUATE

### TESTIMONY BEFORE ACTION IS FILED

### AND DISCLOSURE OF MEDICAL RECORDS

### 'NOTICE OF HEARING'

NOW COMES, JOHN JOSEPH SHULICK, in Pro Per, and  states as
the 'Petitioner' herein that in accordance with Fed. R. Civ. P.
27 (a)(1) he now moves to perpetuate testimony about any and all

matters cognizable in this United States District Court for the Western District where any expected adverse parties may reside.

1. The Petitioner Formally requests an order from the Court authorizing the petitioner to depose the herein named or described persons whom the petitioner expects to be adverse parties or otherwise in a future action, and complete disclosure of his medical records by them.

2. The Petitioner expects to be a party to an action cognizable in the United States District Court for the Western District of Michigan, but cannot presently bring it or cause it to be brought because the adverse parties are withholding crucial medical information.

3. The **SUBJECT MATTER JURISDICTION** of the expected action and the petitioners' interests are grounded in the United States Constitution under the Eighth and Fourteenth Amendments. Of course, the protections of the Due Process Clause, both substantive and procedural, may be triggered when the state, by acts of its agents subject an involuntarily confined individual to deprivations of liberty which are not among the generally authorized by confinement in a state penal institution under 42 U.S.C. § 1983.

### FACTS

4. In order to prevail on a civil rights claim under 42 U.S.C. §

(2)

1983, petitioner must demonstrate that a violation of a right
secured by the Constitution and Laws of the United States
occurred and must also show that the alleged deprivations were
committed by the herein named or identified deponents through
facts that the petitioner wants to establish by the proposed
testimony and his reasons to perpetuate it as follows:

(1) That both state commissioned and contracted personnel were in
fact deliberately indifferent to the petitioners' obvious serious
medical need brought to their immediate attention on 8/16/07 at
approximately 08:30 hrs; and

(2) that the need for immediate medical treatment for the peti-
tioner was "so obvious that even a layperson would have recog-
nized the necessity of immediate medical attention," and that the
'initial examination' performed by the state contracted agent
(RN) was so cursory as to amount to no medical treatment at all
for a duration of more than nine (9) hours; and

(3) Petitioner wishes to establish by the proposed testimony from
all state actors, whether commissioned or contracted, that the
acts or omissions perpetrated by them were sufficiently harmful
to evidence deliberate indifference to his serious medical need.
Thereby resulting in a prolonged period of forced discomfort and
intense pain while his pleas for medical assistance went unheeded
for over nine (9) hours.

**5. The reasons for perpetuating testimony are as follows:**

(3)

(a) preserving for future use testimony which may be lost through the passage of time, such as accuracy of recollection and personal memory; or

(b) ease and availability of locating witnesses through their currently known employment (West Shoreline Correctional Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444; and

(c) Petitioner is an indigent pro se litigant under the 'Special Relationship Doctrine' and being a state prisoner he is apprehensive of retaliation for filing this petition which further necessitates perpetuating deponents' testimony; and

(d) Perpetuating testimony in this matter would prevent a failure or delay of justice, which is evidenced by the adverse parties non-compliance with petitioner's repeated requests for his medical records file in accordance with MCL § 333.26269 (3); See appendix attached hereto and incorporated by reference as "Appendix A."

## DEPONENTS

6. The names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as is known and the expected substance of the testimony of each deponent as follows:

**Deponent** (1) RUO (Resident Unit Officer) **FOSTER:**
Personal address unknown.

(4)

Official capacity:

State agent; Correction Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of RUO FOSTER'S expected testimony will be that on 8/16/07 at approximately 08:30 hrs., she was approached by the petitioner in Henry unit displaying a heavily pronounced limp; and

(b) RUO FOSTER is expected to testify that she called health care at the request of the petitioner, and after a brief exchange with RN GRIFFIN, handed the phone receiver to the petitioner; and

(c) RUO FOSTER is also expected to testify that as the petitioner's housing unit officer she closely observed his physical appearance which obviously demonstrated that he was in severe pain and discomfort requiring immediate medical treatment.

**Deponent** (2) Control Window Officer: **C/O ACKERMAN:**

Personal address unknown.

State agent; Correction Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of officer ACKERMAN'S testimony is expected to be that the petitioner entered the control center severely limping and extreme pain demanding medical treatment; and

(b) that this officer asked petitioner for a pass. Upon learning that petitioner had none, gave a 'Direct Order' for petitioner to return to his unit; and

(5)

(c) that petitioner refused that 'Direct Order,' but supplied the officer with his prisoner ID. card, whereupon petitioner was told by officer ACKERMAN to go to the waiting area; and

(d) ACKERMAN is further expected to testify that the petitioner refused a second 'Direct Order' to leave the waiting area and go back to his unit about 20 minutes later. At which time the petitioner left the waiting area limping into the main hallway and slid down the wall and sat on the floor refusing to move until he received immediate medical treatment; and

(e) ACKERMAN is expected to testify that he then radioed for backup while ordering a non-combative petitioner to lay flat on the floor on his stomach, in full submission to restraint; and

(f) ACKERMAN is expected to testify that when backup arrived moments later petitioner was escorted severely limping in hand cuffs and leg irons to a segregation cell were he was stripped naked exposing his severe injury to all the Corrections Officers that participated in the incident; and

(g) ACKERMAN is further expected to attest to the identities of any and all colleagues taking part in petitioner being escorted to a segregation cell located within the health care treatment area at West Shoreline Correctional Facility at 2500 S. Sheridan Dr., Muskegon Heights, MI 49444.

**Deponent (3) RN GRIFFIN:**

Personal address unknown.

(6)

Official capacity:

State Contracted Health Care Specialist; operating at West Shoreline Correctional Facility on 8/16/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of RN GRIFFIN'S expected testimony will be that she had prior dealings with the petitioner at another facility, so she was aware on the day of controversy that the petitioner was a "Cronic Care patient;" and

(b) It is also expected that she will testify to her years of employment as a contracted health care agent for the Michigan Department of Corrections i.e., a Corrections Health Services Specialist; and

(c) It is further expected that RN GRIFFIN will testify to a cursory visual examination of the petitioner's disrobed body along with the herein described deponents in the segregation cell; and

(d) Health services specialist RN GRIFFIN'S perpetuated testimony will establish on the record that she observed the petitioner in extreme pain, and that his left lower extremity was severely swollen and grotesquely discolored, from the gluteus maximus down to the back of the knee. Her testimony will be that the visual appearance of the petitioner's injury was readily apparent to all who were present and that even the Correction Officers commented on the severity of the petitioner's obvious injury; and

(7)

(e) finally, RN GRIFFIN'S expected testimony should answer whether or not she acted alone or under state law when she left the segregation cell, and the severely injured petitioner without medical treatment for a prolonged period of more than nine (9) hours.

**Deponent (4) C/O WEGNER;**

Personal address unknown.

Official capacity:

State agent; Corrections Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of officer WEGNER'S testimony is expected to demonstrate that he was present when the petitioner was restrained, and taken to a segregation cell where the petitioner was stripped and left in only his briefs and socks; and

(b) WEGNER'S testimony is expected to show that in his personal opinion, after viewing the petitioner's obvious injury, he expressed to RN GRIFFIN and his colleagues that the petitioner's leg looked "very bad;" and

(c) C/O WEGNER is further expected to testify to the identities of all of the Corrections Officers involved in escorting, and personally viewing the the petitioner's semi-nude body in the holding cell which is located in the health care treatment area.

**Deponent (5) LIEUTENANT ROBINSON:**

Personal address unknown.

(8)

Official capacity:

State Commissioned agent; Correction Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of LT. ROBINSON'S expected testimony will establish that he personally confronted the petitioner through the holding cell door not long after RN GRIFFIN and the Corrections Officers left the cell; and

(b) It is expected that LT. ROBINSON will testify that he spe-ifically asked the petitioner if he would be willing to sign a NOTICE OF INTENT; and

(c) It is also expected that LT. ROBINSON will attest to the petitioner refusing to sign, but just wanting to see a doctor.

**Deponent (6) UNIDENTIFIED SECOND SHIFT RN:** Does not wear required tag.

Personal address unknown.

Official capacity:

State contracted health care agent operating at West Shoreline Correctional Facility on 8/16/07 from approximately 14:00 to 22:00 hrs.

(a) This unidentified second shift RN is expected to testify that the petitioner was still only clothed in briefs and socks when she came on duty at approximately 14:00 hrs.; and

(9)

(b) the substance of this second shift health care provider's testimony will establish just what pertinent medical information was relayed to her by the prior health care official's examinations and evaluation of the petitioner's current medical condition; and

(c) the expected testimony of this particular deponent will verify whether she was acting on her own when she did not heed the petitioner's pleas for a medical doctor, or was following the specific instruction of someone else.

**Deponent (7) C/O SEEWALD:**

Personal address unknown.

Official capacity:

State agent; Corrections Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 14:00 to 22:00 hrs.

(a) The substance of officer SEEWALD'S expected testimony will show that he personally viewed the petitioner's injury because of the incessant cries for help that emanated from the holding cell located in the health care area; and

(b) It is further expected that SEEWALD will testify that at approximately 18:00 hrs., after viewing the petitioner and instantly recognizing an obvious, serious medical need, promptly retrieved CAPTAIN SAHAGUN, C/O GAFFORD, C/O DAVIS and C/O ADDIS.

**Deponent (8) CAPTAIN SAHAGUN:**

Personal address unknown.

(10)

Official capacity:

State commissioned agent; Correction officer at West Shoreline Correctional Facility on 8/16/07 from approximately 14:00 to 22:00 hrs.

(a) The substance of CAPTAIN SAHAGUN'S expected testimony will demonstrate that only after she personally viewed the petitioner's obvious injury through the open slot in the segregation cell door, was petitioner released from the holding cell and actually initially, "physically examined" by any health care provider at MTF.

**Deponent (9) C/O GAFFORD:**

Personal address unknown.

Official capacity:

State agent; Correction Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 14:00 to 22:00 hrs.

(a) The substance of C/O GAFFORD'S testimony is expected to show that he was present when the petitioner was actually being examined by the UNIDENTIFIED SECOND SHIFT RN for the "very first time" on 9/16/07 at approximately 19:00 hrs.; and

(b) GAFFORD is also expected to testify that he was one of the two officers that transported the petitioner to Hackley Hospital emergency room for what he is further expected to describe as an obvious, serious and immediate medical need; and

(c) OFFICER GAFFORD is expected to verify through testimony that

(11)

the petitioner was in severe physical pain and emotional distress from the time he came into contact with him on 8/16/07, and that even a layperson should have recognized the necessity of immediate medical attention for such a grotesque looking injury.

## Deponent (10) C/O DAVIS:

Personal address unknown.

Official capacity:

State agent; Correction Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 14:00 to 22:00 hrs.

(a) The substance of the officer DAVIS' testimony is expected to show that he was present when the petitioner was being initially examined by the UNIDENTIFIED SECOND SHIFT RN (deponent 6) and personally viewed the obvious injury to petitioners' left leg; and

(b) DAVIS is also expected to affirm that upon seeing the petitioner's injured leg he remarked that it looked very painful and obviously required immediate emergency room treatment.

## Deponent (11) C/O ADDIS:

Personal address unknown.

Official capacity:

State agent; Correction Officer at West Shoreline Correctional Facility on 8/16/07 from approximately 14:00 to 22:00 hrs.

(a) The substance of officer ADDIS' expected testimony will demonstrate that he was one of the two officers that transported the

(12)

petitioner to the emergency room at Hackely Hospital at approximately 19:00 hrs.; and

(b) OFFICER ADDIS is expected to further testify that he personally viewed the petitioner's injuries at the prison and during the emergency physician's examination with OFFICER GAFFORD, and is therefore expected to declare and affirm that the petitioner was experiencing extreme pain which he had endured needlessly because he was not treated nine hours earlier.

**Deponents (12 & 13) EMERGENCY PHYSICIANS:**

**UNIDENTIFIED:**

Personal addresses unknown.

Official capacities:

Medical Doctors; agents of Hackley Hospital in Muskegon, MI., on 8/16/07 at approximately 20:00 hrs.

(a) The substance of the herein described emergency physicians testimony is expected to establish that these medical professionals diagnosed the petitioner as having a very real and obvious, medical need on 8/16/07; and

(b) THESE PHYSICIANS are expected to also affirm that the petitioner's condition was so serious that intravenous pain medication had to be administered at the time of their examination; and

(c) It is further expected the ER PHYSICIANS will attest that their medical diagnosis included a continued controlled prescription for pain and further indepth evaluation by an orthopedic

(13)

surgeon; and

(d) Both deponent PHYSICIANS are expected to testify to the taking of x-rays of the petitioner's injured leg, however, due to the insufficiency of those x-rays in properly depicting the extent of the patients's SOFT TISSUE INJURIES they recommended a speciallist.

**Deponent (14) RN BARBER:**

Personal address unknown.

Official capacity:

State contracted health care agent operating at West Shoreline Correctional Facility on 8/16-17/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of RN BARBER'S expected testimony will be that, either he was not working on 8/16/07, or he was deliberately indifferent to the petitioner's serious medical needs; and

(b) It is also expected that RN BARBER will testify to examining the petitioner's injury on 8/17/07, and decrying the importance of the need for any further evaluation by an orthorpedic surgeon in order to minimize any further medical expenditures in the matter.

**Deponent (15) PHYSICIAN'S ASSISTANT LA NORE:**

Personal address unknown.

Official capacity:

State contracted health care agent, specialist; operating at West

(14)

Shoreline Correctional Facility on 8/16-17/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of PA LA NORE'S expected testimony will show that either he was not working on 8/16/07, or that he was deliberately indifferent to the petitioner's obvious, serious medical need;

(b) It is also expected that PA LA NORE will attest to his initial examination of the petitioner's injury on 8/17/07, where he visually and verbally concurred with the ER PHYSICIANS that the petitioner's injury was causing him excruciating pain, and extreme difficulty in movement, and as such constituted a serious medical need.

**Deponent (16) DOCTOR NELSON:**

Personal address unknown.

Official capacity:

State contracted health care agent, specialist; operating at West Shoreline Correctional Facility on 8/16/07 from approximately 08:30 to 16:00 hrs.

(a) The substance of DR NELSON'S expected testimony will demonstrate that he never personally examined the petitioners injury on 8/16/07, but rather delegated that authority to the on duty PA or RN whoever that might be; and

(b) It is also expected that DR. NELSON will testify that he was either not working on 8/16/07, or he was deliberately indifferent

to the petitioner's obvious, serious medical need.

**Deponent (17) ORTHOPEDIC SURGEON DR. ANHOLTZ:**

Personal address unknown.

Official capacity:

Orthopedic Specialist; business address unknown, Private Practice in Muskegon, MI.

(a) The substance of DR. ANHOLTZ expected testimony will establish that according to his opinion the petitioner had a severely disabling injury and was in obvious pain at the time of his initial appointment for evaluation on or about October of 2007; and

(b) It is also expected that DR. ANHOLTZ will testify that the petitioner's injury presented such an obvious physical visual deformity to the patient's left leg that even a layperson would suspect that there was a serious medical need for further evaluation; and

(c) DR. ANHOLTZ testimony would further establish that in the opinion of an expert, an M.R.I. analysis of the patient's injury was necessary in order to adequately diagnose, and properly treat the petitioner's condition and therefore ordered further testing which revealed SEVERE SOFT TISSUE TRAUMA and INTERNAL BLEEDING.

**Deponents (18 & 19) TRANSPORTATION OFFICERS: C/O CARROLL and C/O TORTERELLI:**

Personal addresses unknown.

(16)

Official capacity:

State agents; Correction Officers for prisoner transport at West Shoreline Correctional Facility in October of 2007.

(a) The substance of both transportation Officers CARROLL and TORTERELLI'S expected testimony will establish that the petitioner was transported to Hackely Hospital by them to receive a previously scheduled M.R.I. evaluation, and was still suffering from the effects of the injury for which he was being examined for; and

(b) OFFICERS CARROLL and TORTERELLI are further expected to verify that before returning to the prison compound with the petitioner, they waited for the Hospital technicians to prepare the completed films for transport with the patient back to MTF health care; delivering petitioner and films to the Health care services area.

**Deponent (20) HEALTH UNIT MANAGER HELEN THOMPSON:**

Personal address unknown.

Official capacity:

State contracted health care specialist; operating at West Shoreline Correctional Facility on 8/16/07 from approximately 08:30 to 16:00 hrs.

(a) The substance of H.U.M. HELEN THOMPSON'S expected testimony will establish what if anything, was actually 'brought' to her immediate attention by any of her subordinate staff about the petitioner's injuries on 8/16/07; and

(17)

(b) HELEN THOMPSON is further expected to testify as to exactly when, if at anytime, she received information in any form, brought to her immediate attention by any staff concerning petitioner's injury on 8/16/07 or soon thereafter.

**Deponent (21) RN SUPERVISOR, A. AQUINO:**

Personal address unknown.

Official capacity:

State contracted agent; RN SUPERVISOR operating at West Shoreline Correctional Facility on 8/16/07 and 9/05/07 from approximately 06:00 to 14:00 hrs.

(a) The substance of RN SUPERVISOR A. Aquino's expected testimony will establish that he was either not working on 8/16/07, or was deliberately indifferent to the petitioner's obvious, serious medical need; and

(b) A. AQUINO is expected to testify that he never personally, actually observed and or evaluated the petitioner's injury before he responded to a grievance filed by the prisoner, and thereby falsified an official document by stating in his response the following:

> ".... & in no distress at that time, in the holding cell. Lower extremity range of motion was noted with grievant moving without difficulty, and no injury seen to surrounding tissue."

7. Petitioner filed several successive grievances against Health care services staff. The latest was a verified request for

(18)

medical records after they ignored his prior prisoner kites. Health Care Services at MTF are stonewalling this petitioner's prior legitimate requests for medical records pursuant to MCL § 333.26269 (3) & (4); see Appendix A.

## RELIEF REQUESTED

Therefore, petitioner also requests of this Court an order compelling his Health Care Services Provider (CMS - Corrections Medical Services) to disclose all medical records pertaining to any finding, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition, under Fed. R. Civ. P. 27 & 35 (a)(b)(1)(2); 28 U.S.C. § 1732 and MCL § 333.26269 (3) & (4).

This Petitioner is a person in the custody and legal control of an alleged adverse party to a 42 U.S.C. § 1983 action under the special relationship doctrine. Therefore, petitioner moves this Court to grant this petition upon good cause shown that he expects to be a party to an action cognizable in this United States Court but cannot presently bring it or cause it to be brought without Documentary Medical evidence and perpetuated testimony by the herein named or described deponents.

(20)

## VERIFICATION

28 U.S.C.A. § 1746

I, JOHN JOSEPH SHULICK, declare and affirm under penalty of perjury that the foregoing enumerated statements herein are true and correct.

Executed, January 29, 2008

John Joseph Shulick (P447749)
In Pro Per
West Shoreline Correctional Facility
2500 S. Sheradin Dr.
Muskegon Heights, MI 49444

cc: File
USDC/WD
MTF/CMS
JJS

(21)