In the United States District Court
For the Western District of Michigan

Case No. 1:08-CV-121

__JOHN JOSEPH SHULICK # 447749__

(Enter above the full names of all plaintiffs, including prisoner number, in this action.)

v. __MICHIGAN DEPARTMENT OF CORRECTIONS et al.,__
__AND CORRECTIONAL MEDICAL SERVICES et al.__

(Enter above the full name of the defendant or defendants in this action.)

**FILED - GR**
April 10, 2008 11:23 AM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___LEH___ / _____

## COMPLAINT
(AMENDED)

I. **Previous Lawsuits**

CAUTION: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in this and other federal courts without prepayment of the required $350 filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $350 filing fee regardless whether your complaint is dismissed.

A. Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility? Yes ☐ No ☒

B. If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

1. Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.

   __NONE__

2. Is the action still pending? Yes ☐ No ☐

   a. If your answer was no, state precisely how the action was resolved: __NONE__

3. Did you appeal the decision? Yes ☐ No ☐

4. Is the appeal still pending? Yes ☐ No ☐

   a. If not pending, what was the decision on appeal? __NONE__

5. Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit? Yes ☐ No ☐

   If so, explain: __NONE__

(Last Revised: January 2007)

II. Place of Present Confinement _West Shoreline Correctional Facility, 2500 S. Sheridan Dr. Muskegon_

If the place of present confinement is not the place you were confined when occurrence that is subject of instant lawsuit arose, also list the place you were confined: _____

III. **Parties**

In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.

A. Name of Plaintiff _JOHN JOSEPH SHULICK # 447749_

Address _West Shoreline Corr. Fac. 2500 S. Sheridan Dr., Muskegon Hts., MI. 49444_

In Item B below, place the full name of the defendant in the first blank, his or her official position in the second blank and his or her place of employment in the third blank. Use Item C for the names, positions and place of employment of all additional defendants. Attach extra sheets as necessary. **State whether you are suing each defendant in an official or personal capacity.**

B. Defendant _See attached_ is employed as _See attached_ at _West Shoreline Corr. Fac., 2500 S. Sheridan Dr., Muskegon Hts., MI. 49444_

C. Additional Defendants _See attached: Amended Complaint 42 U.S.C. § 1983 incorporated by reference hereto, and naming or describing all Defendants in this instant matter on pages one (1) three (3), four (4) and five (5). All Defendants being sued in their individual and official capacities._

IV. **Statement of Claim**

State here, as briefly as possible, the facts of your case. Describe how each defendant is personally involved. Include also, the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.

_See attached: Amended Complaint 42 U.S.C. § 1983 attached hereto and incorporated by reference to this verified complaint form._

Exhaustion of Administrative Remedies: Yes;

See attached Amended Complaint 42 U.S.C. § 1983 hereto and incorporated by reference to this verified complaint form, pages 5, 6, 7.

Statement of Claims: see attached, Amended Complaint 42 U.S.C. §1983 at pages 7-14, also see causes of action at pages 11-14.

V. **Relief**

State briefly and precisely what you want the court to do for you.

See attached: Amended Complaint 42 U.S.C. § 1983 attached hereto and incorporated by reference to this verified form, at page 15.

VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:

April 3, 2008
Date

John Joseph Shulick
Signature of Plaintiff

## NOTICE TO PLAINTIFF(S)

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

-4-

(Last Revised: January 2007)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN JOSEPH SHULICK,

                                                 /                    Case No. 1:08-cv-121

    Plaintiff,

                                                                     Hon. **Paul L. Maloney**

v.

MICHIGAN DEPARTMENT OF CORRECTIONS et al.,
AND CORRECTIONAL MEDICAL SERVICES et al.
                                                /

    Defendants,

## AMENDED COMPLAINT 42 U.S.C.A. § 1983

### INTRODUCTION

Plaintiff is a Pro Se prisoner litigant in this instant case and therefore begs the Court's indulgence in the matter of his previous **docket #1** filing. Due to the serious lack of legal assistance and materials at the present facility where I am housed, I am forced to make due with extremely limited information. I filed the "Petition For Depositions to Perpetuate Testimony Before Action is Filed and Disclosure of Medical Records" (with exhibits) because I believed that the language of Rule 27 gave me that option by allowing "limited inquiries for the purpose of gaining information regarding physical evidence entirely within the control of the adverse party and which was otherwise unavailable to the Rule 27 Petitioner." In the instant case Plaintiff is an indigent person under the special relationship doctrine and the adverse party retains sole possession of the physical evidence (medical records). Moreover, that physical evidence is within the exclusive

control of the governmental entity at this time, and thus places the adverse party in a position to render the information unavailable as a result of the action it has taken in denying Plaintiff access because he is an indigent person (case cite omitted). See Rule 27 Petition incorporated by reference to this amended verified complaint (**docket #1**).

Plaintiff, was a prisoner at West Shoreline Correctional Facility on or about July of 2007. Plaintiff had injured his left upper leg in August of 2007, while running on the yard, which grew progressively worse over the next several days. In the interim the penitentiary system required Plaintiffs' continual mobility in answering call-outs and meal-calls.

On August 16, 2007 Plaintiffs' medical condition was brought to the immediate attention of both M.D.O.C. Staff and C.M.S. personnel.

As a result, Plaintiff was denied treatment and forced to needlessly suffer for over 9 hours. Defendants actions and or in-actions served absolutely no penological purpose.

Therefore, Plaintiff brings this instant action claiming that the Defendants herein named or described were in fact deliberately indifferent to his legitimate serious medical needs by conspiring to deny treatment for an injury that was "so obvious that even a layperson should have recognized the necessity of immediate medical attention," and that the 'initial examination' performed by Facility Staff was so cursory as to amount to no treatment at all for a duration of more than 9 hours.

## JURISDICTION

1. This is a civil rights action brought under **42 U.S.C. §§ 1983, 1985 (3),**

(2)

1986, pursuant to this Courts' jurisdiction under **28 U.S.C. §§ 1331, 1343, 2201**, and **2202** together with **Rules 57** and **65** of the Federal Rules of Civil Proceedure.

2. **Venue** in this Court is proper under **28 U.S.C. § 1391 (b)**, in that Defendants herein either reside in Muskegon County, Michigan, or that all of the events here in question occurred in Muskegon County.

## PARTIES

3. Plaintiff, **JOHN JOSEPH SHULICK**, #447749 is currently confined at the West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444. As such he is under the special relationship doctrine with the Michigan Department of Corrections and Correctional Medical Services Inc.

4. Defendant **UNKNOWN OFFICER** working at window in control center on 08/16/07, day shift, is, and was at all times relevant, employed as an officer at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

5. Defendant **OFFICER ACKERMAN** is, and was at all times relevant, employed as a C/O at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

6. Defendant **OFFICER WEGNER** is, and was at all times relevant, employed as a C/O at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

7. Defendants **SEVERAL UNKNOWN DAY SHIFT OFFICERS**, are, and were at all times relevant, employed as C/Os' at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

(3)

8. Defendant **RN GRIFFIN** is, and was at all times relevant, employed as a nurse at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

9. Defendant **LIEUTENANT ROBINSON** is, and was at all times relevant, employed as a commissioned officer at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

10. Defendant **UNKNOWN SECOND SHIFT RN** is, and was at all times relevant, employed as a nurse at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444. (RN COUCH?)

11. Defendant **RN BARBER** is, and was at all times relevant, employed as a nurse at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

12. Defendant **PHYSICIANS' ASSISTANT LANORE** is, and was at all times relevant, employed as a Health Care Specialist at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444; C.M.S. agent. (THOMAS A. LaNore)

13. Defendant **DOCTOR NELSON** is, and was at all times relevant, employed as a physician at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444; C.M.S. agent. (William Nelson)

14. Defendant **HEALTH UNIT MANAGER HELEN THOMPSON** is, and was at all times relevant, employed as a Health Care Unit Manager at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444; C.M.S. agent, Directly involved in decision-making process.

15. Defendant **RN SUPERVISOR, A. AQUINO** is, and was at all times relevant, employed as a nurse supervisor at West Shoreline Correctional Facility,

(4)

2500 S. Sheridan Drive, Muskegon Heights, MI 49444. Directly involved in supervising nursing staff.

16. Defendant **ADW STEWART** (Assistant Deputy Warden) is, and was at all times relevant, employed at West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444. Acting Deputy Warden during controversy.

17. Defendant **WARDEN MARY BERGHUIS** is, and was at all times relevant, employed as Acting Warden at both E.C. Brooks and West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444. Acting Warden during controversy/failure to train.

18. Defendant **M.D.O.C. DIRECTOR PATRICIA CARUSO** is, and was at all times relevant, employed as Director of Policy and Procedure for the Michigan Department of Corrections P.O. Box 30003 Lansing, MI 48909. Directly involved in policy or custom implementation/failure to train.

19. **Defendants #12, 13, 14, 15** are believed to be agents of **CORRECTIONAL MEDICAL SERVICES INC.**, of St. Louis and to the best of my knowledge a close nexus exists between the Michigan Department of Corrections and the above mentioned Health Care Providers (A.K.A. C.M.S.). Failure to train.

20. Defendants herein named or described all were and are presently acting under color of state law, and are **NOW BEING SUED IN BOTH THEIR PERSONAL INDIVIDUAL, AND OFFICIAL CAPACITIES.**

## EXHAUSTION OF REMEDIES

21. On or about August 17,2007, Plaintiff initiated a grievance #MTF-07-0800541-12E-1, pertaining to all of the identifiable staff that grievancer

(5)

was specifically aware of by name at the time his grievance was filed. Plaintiff was placed on RoomLay-in, meals-in for several weeks. See attached Grievance & Medical details incorporated by reference as **Appendix I (a)(b)(c) & (d)**.

22. By 09/10/07 grievancer received a step I response. On 09/12/07 grievancer submitted a step II appeal and received no response by 10/24/07.

23. On 10/25/07 grievancer sent a step III appeal from his goldenrod copy of step II, because he had not received the required timely response to his step II per policy.

24. On 11/02/07 grievancer finally received a step II response to grievance #MTF-07-0800541-12E-1, and promptly forwarded it to step III, although he received it from step II in an untimely manner.

25. Grievancer finally received a rejection of his step III appeal on 01/31/08 specifically finding that "Grievant does not provide additional relevant information for consideration with his step III appeal. Grievance denied." See copies of grievance #MTF 07-0800541-12E-1, at Appeal Steps I, II and III attached hereto and incorporated by reference as **Appendix I**.

26. On November 18, 2007, Plaintiff initiated a grievance #MTF-07-12-0758-12-Z1, formally pertaining to receiving his medical records file without paying a fee per MCL § 333.26269 (3)(4); grievance was denied.

27. On December 26, 2007, Plaintiff initiated a step II appeal, which was received on February 13, 2008, and similarly denied/ *unanswered*.

28. Plaintiff initiated a step III appeal as a result, but has not, as of yet, received a response. Attached and incorporated by reference as **Appendix II**.

(6)

29. Plaintiff has demonstrated full exhaustion of all **available** administrative remedies within the meaning of **42 U.S.C. § 1997e (a)**. And expressly states that the complete medical records file of the Plaintiff will irrefragably prove that a conspiracy to conceal the actual seriousness of the injury in controversy was perpetuated by **A. AQUINO** at the behest of Defendants herein listed at ¶¶ **1-18**.

## FACTUAL ALLEGATIONS

30. On August 16, 2007, at approximately 8:30 A.M. Plaintiff approached his unit officer and requested that she contact Health Care, because he was in excruciating pain. Health Care Provider **RN GRIFFIN** denied that request and instead instructed the Plaintiff to fill-out a Health Care Kite and drop it in the box located in the chow hall when the Plaintiff was called-out for lunch at approximately 11:45 hrs.

31. Plaintiff immediately dragged himself to Health Care where he was threatened with a Major Out-of-Place Misconduct report if he did not return to the unit. Plaintiff told the Control Center Window Officer that he was not leaving until he received medical treatment ("Officer's name in unknown" yet described herein as M.D.O.C. employee/agent ¶ 4).

32. Moments later **C/O ACKERMAN** came on scene and gave the Plaintiff a Direct Order to leave the area. Plaintiff again refused to leave without receiving medical treatment for his serious injury.

33. Soon Thereafter, Plaintiff was submissively restrained and escorted (severely limping) by several **UNIDENTIFIED CORRECTIONS OFFICERS** to a segregation cell located within the Health Care treatment area, ('UNIDI-

(7)

**FIED OFFICERS'** are described herein as employees/agents of the M.D.O.C., ¶¶ 4, 7).

34. Once inside the holding cell the C/Os' strip searched the Plaintiff and took all his clothing, returning only his shocks and briefs, which fully exposed his grotesque discolored, and extremely swollen left leg to every individual with access to the cell; including **AQUINO, RN GRIFFIN** and **OFFICERS ACKERMAN, WEGNER, LT. ROBINSON, UNKNOWN OFFICERS AND AGENTS, NELSON, THOMPSON, BARBER, LA NORE** and **UNKNOWN RN** ¶ 10.

35. **NURSE GRIFFINS'** response to one of the officers comments about the obvious condition of Plaintiffs' leg injury was, "that's just an old bruise."

36. **GRIFFIN** then asked the Plaintiff why he did not kite when she talked to him on the phone earlier. Plaintiff responded that he was in too much pain and that he needs immediate treatment, at least some crutches!!!

37. **RN GRIFFIN** then turned to leave the holding cell while stating "maybe you'll get crutches and maybe not."

38. As **OFFICER ACKERMAN** was exiting the cell he smiled and said, "you can't always get what you want."

39. For approximately 9½ hours Plaintiffs' intermittent cries for medical assistance went unanswered by all 'day shift' personnel, and he was left to suffer in unmitigated pain until after the evening meal.

40. Hours later an **UNKNOWN NURSE** called Plaintiffs' name as he lay suffering on a bare mattress wrapped in only a blanket wearing briefs and socks (**UNKNOWN NURSE** is herein described as an M.D.O.C. employee/agent ¶ 10.

41. When Plaintiff saw that a different person was on duty he actually broke down and cried for her to help him. She refused, stating that she was informed that Plaintiff's injury was nothing more than an old bruise.

(8)

42. Plaintiff was under severe physical, psychological and emotional stress at that time and began to uncontrollably scream for help and pounded on the cell door with his fists.

43. The second shift Captain was finally summoned, not by the **UNKNOWN NURSE**, but by a second shift officer that came to the cell to investigate. That investigation resulted in Plaintiff eventually being taken to the emergency room later that evening.

44. Plaintiff was diagnosed by the **UNKNOWN EMERGENCY ROOM PHYSICIANS** as having serious soft tissue injury to his left upper leg, which caused internal bleeding creating extreme pressure and pain. (See **Petition docket #1** incorporated by reference at #(12 & 13 (a)(b)(c)(d)).

45. Plaintiff was administered intravenous pain medication and prescribed controlled pain medication at the prison, together with follow-up evaluations by an Orthopedic Surgeon, who did in fact order an M.R.I. months later. (See **Petition docket #1** incorporated by reference at #(17 (a)(b)(c)).

46. After reviewing the results of the M.R.I. **DR. ANHOLTZ** concluded that the patients' muscle had not detached from his pelvis as originally suspected, however, an extremely large blood clot had formed in the Plaintiffs' leg as a result of the injury.

47. Plaintiff claims are not grounded upon the causation of his injury per se, but rather on the premise that once that injury was made manifest to both medical and correctional staff, they then engaged in a consorted effort to deny the Plaintiff medical attention for a duration of more than 9 hours, and then later sought to minimize his condition (see **Appendix I**).

(9)

48. The Plaintiff has suffered and continues to suffer from extreme emotional distress and mental anguish, as well as frustration and anxiety, as a result of the administrations' draconian failure to provide him with medical treatment and his medical records.

49. The Plaintiff continues to experience the effects of not only the injury, but also the unwritten 'policy or custom' of deliberate indifference so pervasively enforced by Health Care Services/C.M.S., and correctional staff/administrative personnel at West Shoreline Correctional Facility.

50. Plaintiff has been 'classified as a Chronic Care Patient since 2005.' He was diagnosed with Throbocytosis/Myeloprolifeative Disorder while at E.C. Brooks Correctional Facility where he first encountered **RN GRIFFIN** and **MARY BERGHUIS**, Warden of both herein named penitentiaries.

51. Plaintiff contends that nurse **GRIFFIN** holds a personal and class based animus toward him, because of the way in which a Specialist was appointed to his chronic care management; thereby taking carte blanche authority away from both Brooks and West Shoreline Penitentiary Health Care Systems. (See complete medical file requested by **Petition docket #1** incorporated by reference in this verified amended complaint).

52. That Defendants have willfully, wantonly, and recklessly disregarded Plaintiffs' legitimate and serious medical needs, and the continual pain and suffering which arises therefrom, by not only denying initial care but also concealing specific documentation that would demonstrate their **Joint** and **Several** duplicity in the instant case.

## FIRST CAUSE OF ACTION

53. Plaintiff re-asserts ¶¶ 1-52 herein by reference thereto.

54. The Defendants herein named are Individual members of a **Joint Enterprise**, and as such were and are jointly and severally liable for their deliberate indifference to Plaintiffs' serious medical needs and the pain and suffering which arises therefrom in violation of the United States Constitution, Amendment Eight.

## SECOND CAUSE OF ACTION

55. Plaintiff re-asserts ¶¶ 1-54 herein by reference thereto.

56. **42 U.S.C. § 1985 (3)** provides a cause of action for a conspiracy to deprive **ANY PERSON** or class of persons of the equal protection of laws. Prison officials must provide, indeed have a constitutional obligation to "provide essential health care for obvious, serious medical needs," and cannot evade joint liability simply by stating that each official involved (either personally or in a supervisory capacity) made a personal covert decision not to act ("turned a blind eye").

57. Defendants were and are willfully confederate through their joint participation in depriving Plaintiff of a right that was clearly established in law at the time, and any **'reasonably competent officials'** should have been aware that their actions were in violation of that right in law.

58. Defendants herein named or described were and are perpetuating the conspiracy by **violating state law** in an attempt to conceal physical evidence contained in the Plaintiffs' medical file that would verify the **RN SUPER-**

(11)

**VISOR'S** collusion in minimizing the severity of the Defendants' unanimous deprivation of Plaintiffs' Eighth Amendment right.

59. Defendants consist of "two or more persons who combined for the purpose of inflicting upon another person an injury which is unlawful in itself, **or which is rendered unlawful by the mode in which it is inflicted**, and in either case the other person suffers damage, they commit the tort of conspiracy." P.H. Winfield, A Textbook of the law of Tort § 128, at 434 (5th ed. 1950).

### THIRD CAUSE OF ACTION

60. Plaintiff re-asserts ¶¶ 1-59 herein by reference thereto, and **PATRICIA CARUSO'S Failure to Train Subordinates.**

61. Defendant **RN GRIFFIN** was and is an employee of the Michigan Department of Corrections along with all herein named or described officers and agents thereof.

62. On August 16, 2007, **RN GRIFFIN** was acting as one with sole policymaking authority when she acted in concert with said officers; and in fact was the **highest qualified medically trained individual to actually visually examine the Plaintiffs' injury between approximately 08:30 to 19:00 hrs.**

63. Defendants **CARUSO, BERGHUIS, STEWART** and **ALL C.M.S EMPLOYEES** were and are exercising a tacit policy or custom on which official-capacity liability is imposed through **42 U.S.C. § 1983** for specific on-going constitutional deprivations visited on the inmate population at MTF pursuant to governmental custom with the force of law. Even though such custom has not received formal approval through the body's official decision-making channels.

(12)

64. Defendants "Personal involvement," however, is not limited to **direct participation** in the deprivation of rights at issue. Defendants named herein, who occupy supervisory positions may be "personally involved" in a deprivation of constitutional rights in several ways, including:

    (1) Directly participating in the infraction;

    (2) after learning of the violation, failing to remedy the wrong;

    (3) creating a policy or custom under which unconstitutional practices occurred, or allowing such a policy or custom to continue;

    (4) being grossly negligent in managing subordinates who caused the unlawful condition or event; or

    (5) demonstrating "gross negligence" or **"deliberate indifference"** to the constitutional right of an individual by having actual or constructive notice of unconstitutional practices and failing to act (cite omitted)(See **Appendix III** attached hereto and incorporated by reference in this amended verified complaint, see e.g., ¶ 34, for named and described directly participating Defendants).

65. In short, Plaintiff proffers for this Court 'numerous documentary evidence' of episodes of delays after repeated requests were made by other inmates for medical treatment which went unmet for extended periods. See e.g., verified statements of inmates at West Shoreline Correctional Correctional Facility, attached hereto and incorporated by reference as **Appendix IV (a)(b)(c)(d)(e)&(f)**. I JOHN JOSEPH SHULICK declare under penalty of perjury that I received each document/copy from undersigned person at M.T.F.

66. Plaintiff re-asserts ¶¶ 1-65 herein by reference thereto in this articu-

(13)

lated verified amended pleading that, a policy or custom of deliberate indifference was and is, actively, implicitly employed by all the herein named or described Defendants; Defendants willfully, wantonly, and recklessly inflict needless suffering and pain upon Plaintiff and a specific segment of the prison population without legitimate medical or penological reasons, and therefore continues to violate the Eighth Amendment of the United States Constitution by "turning a blind eye" to prisoners serious medical needs.

## RELIEF

A. That this Court ORDER, ADJUDGE, and DECREE that Plaintiffs' affliction was and is a serious medical condition for which Defendants were and are responsible for providing care, treatment, and accommodation for as long as Plaintiff shall be in the custody of the Michigan Department of Corrections.

B. That this Court enter an injunction which commands and enjoins Defendants **CARUSO, BERGHUIS, STEWART, THOMPSON, NELSON, LA NORE,** and **AQUINO** to provide Plaintiff Access to, and Care, Treatment and Accommodation from **Appropiately Trained Medical Staff** employed by, or contracted to, the Michigan Department of Corrections.

C. That Plaintiff be awarded $300,000.00 Compensatory and $477,000.00 in Punitive damages for his pain, suffering and loss, including emotional and mental anguish, which flow directly from the egregious unwarranted suffering caused by Defendants' deliberate indifference to his legitimate and serious medical needs.

D. That Plaintiff be afforded a trial by jury in the instant case.

E. That Plaintiff be awarded his costs of bringing this action before the Court.

F. Any Further relief that this Court deems necessary and just.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on *April 3*, 2008

*John Joseph Shulich*
John Joseph Shulick #447749
In Pro Per
West Shoreline Correctional Facility
2500 S. Sheridan Dr.
Muskegon Heights, MI 49444

(16)